UNITED STATES BANKRUPTCY COURT

DISTRICT OF VERMONT

| | |
|---|---|
| IN RE: ) | |
| ) | |
| PLASTIC TECHNOLOGIES OF VERMONT, INC. ) | Case No. 13-10729- cab |
| PLASTIC TECHNOLOGIES OF MARYLAND, INC. ) | *Chapter 11 case* |
| PLASTIC TECHNOLOGIES OF NEW YORK, LLC. ) | Jointly Administered |
| ) | |
| Debtor in Possession. ) | |

**STIPULATED BRIDGE ORDER AUTHORIZING LIMITED USE OF
CASH COLLATERAL, AUTHORIZING POST-PETITION BORROWING AND
GRANTING ADEQUATE PROTECTION**

Upon the motion (the "Motion") dated October 21, 2013 of Plastic Technologies of Vermont, Inc., Plastic Technologies of Maryland, Inc., and Plastic Technologies of New York, LLC (collectively, "Debtors"), pursuant to, *inter alia*, sections 105, 361, 362(a), 363(c) and 364 of Title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (as amended, the "Bankruptcy Code") and Rules 2002, 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), seeking authorization for the Debtor to use Cash Collateral (as defined in the Bankruptcy Code) in which Centrix Bank ("Centrix") has a perfected first priority lien interest;

The Court having considered the Motion on limited notice and upon a stipulation agreed to between the Debtor and Centrix in accordance with Rule 4001-2(c) and 4001-4 of the Vermont Local Bankruptcy Rules (the "Local Rules"); and it appearing to the Court that the relief requested by the Motion is in the best interests of the Debtors and their creditors and is essential for the continued operation of the Debtors' business; and after due deliberation and consideration and good and sufficient cause appearing therefor;

**IT IS HEREBY FOUND, DETERMINED, ORDERED AND ADJUDGED** that:

1. *Jurisdiction*. This Court has core jurisdiction over these proceedings and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157(b) and 1334.

2. *Consideration On Limited Notice and Scheduling of a Hearing and Further Notice*. Pursuant to Rule 4001-2(c) and Local Rule 4001-1 the Motion was considered on limited notice at the request of the Debtors and Centrix, and such consideration was appropriate in the circumstances of these cases so as to avoid immediate and irreparable harm to the Debtors' estate. A hearing with regard to the Debtors' further use of Cash Collateral will be held, on notice, on _____, Vermont and VIT sites, pursuant to the Debtors' motion for authorization for use of cash collateral, and granting of adequate protection liens filed with this Court on October 21, 2013.

3. *Background*.

   (a) <u>Petition Date</u>. On October 21, 2013 (the "<u>Petition Date</u>"), the Debtors filed voluntary petitions for relief with this Court under Chapter 11 of the Bankruptcy Code (the "<u>Chapter 11 Cases</u>" or the "<u>Cases</u>"). The Debtors are continuing in possession of its property, and operating and managing its business, as debtor-in-possession, pursuant to sections 1107 and 1108 of the Bankruptcy Code.

   (b) <u>Need to Use Cash Collateral</u>. The Debtors have an immediate need to use Cash Collateral. The Debtors do not have sufficient available sources of unencumbered working capital and financing to operate its business in the ordinary course of business. As of the Petition Date, the Debtors have requested permission to utilize cash collateral, and an interim hearing with regard to the use of cash collateral was held on October 22, 2013 at _____pm. Prior to entry of an order approving the final use of cash collateral, however, the Debtors require the

limited use of Cash Collateral in order to continue operating its business in the ordinary course and so as to avoid serious and irreparable harm to the Debtor and its estate, which harm would occur if the Debtor were unable to use Cash Collateral as requested in the Motion.

(c) <u>Request for Immediate Entry of Order</u>.  In order to avoid immediate and irreparable harm to the Debtors' estate that will occur if this Order is not immediately approved, the Debtors have requested that Centrix permit the use of Cash Collateral for such operating purposes set forth in the Budget (as defined herein).  In addition, the Debtor has requested immediate entry of this Order pursuant to Local Rule 4001-4.

(d) <u>Limited Consent</u>.  Centrix has consented to the use of Cash Collateral, but only to the extent such Cash Collateral is used in strict accordance with the terms and conditions of this Order, including but not limited to the operating purposes set forth in the Budget.

(e) <u>Good Cause for Entry of the Order</u>.  Good cause has been shown for the entry of this Order.  Among other things, entry of this Order will minimize disruption of the Debtor's business and operations and permit it to meet payroll and other operating expenses, obtain needed supplies and retain customer and supplier confidence by demonstrating an ability to maintain normal operations.  In accordance with Local Rule 4001-4 the permission to use Cash Collateral hereunder has been limited to the amount necessary to avoid immediate and irreparable harm to the Debtors' estate pending final hearing on notice.

(f) <u>The Prepetition Financing</u>.  Pursuant to the Prepetition Loan Agreement and related documents (the "<u>Prepetition Loan Documents</u>"), the Debtors acknowledge and agree that the Debtors granted to Centrix certain liens and security interests in a variety of forms of collateral, including, without limitation, collateral that constitutes "<u>Cash Collateral</u>" as defined in section 363 of the Bankruptcy Code (with all such collateral being referred to herein as the

3

"Prepetition Collateral" and the liens thereon being referred to as the "Prepetition Liens"). The Prepetition Loan Documents are more particularly described on the attached Schedule A, together with the amounts due on each of the Prepetition Obligations. The Debtor acknowledges and agrees that it is obligated to Centrix pursuant to the Prepetition Loan Documents as of the Petition Date, in the amounts described on the attached Schedule A (the "Prepetition Obligations").

(g)     Basis for Adequate Protection.  Centrix is entitled to receive adequate protection pursuant to sections 361, 362, 363 of the Bankruptcy Code, to the extent any amounts under the Prepetition Loan Documents remain outstanding, for any diminution in the value of the Prepetition Collateral resulting from the Debtors' use, sale or lease of such Prepetition Collateral, including Cash Collateral, during the Chapter 11 Cases. The parties represented at the hearing that adequate protection is necessary to avoid diminution of the estate and the Bank's Collateral.

4.     *Authorization for Limited Use of Cash Collateral*.  The Debtors are authorized to use Cash Collateral solely for the period (the "Specified Period") from the Petition Date through and including November 22, 2013, where the final hearing will be conducted to consider further use of Cash Collateral. The right of the Debtors to use Cash Collateral shall terminate upon the earliest to occur of: (a) expiration of the Specified Period, (b) failure of the Debtors to comply with any of the terms or conditions of this Order, (c) the dismissal or conversion of this case to a case under Chapter 7 of the Bankruptcy Code, or the appointment of a trustee under Chapter 11 of the Bankruptcy Code, or (d) a final order authorizing the use of Cash Collateral substantially in accordance with the terms of this Order or otherwise acceptable to Centrix in its sole discretion is not entered within 45 days from the Petition Date. Except as otherwise expressly provided herein, Cash Collateral may be used during the Specified Period solely up to the amounts, at the times and for the line items identified in the cash collateral budget (the "Budget") attached as Schedule

4

B; provided that, in addition to the restrictions of the Budget, during the Specified Period, the Debtor shall not use Cash Collateral in an amount exceeding an aggregate total of $_____.

    5.    Adequate Protection Payments. None.

    6.    *Adequate Protection Liens*. As adequate protection to Centrix for any diminution in the value of the Prepetition Collateral, including as a result of the Debtors' use of Cash Collateral for the Specified Period, which includes the further extension of the Line of Credit in an amount not to exceed $190,000.00, effective immediately upon the execution of this Order, the Debtors hereby grants to Centrix a continuing, valid, binding, enforceable and automatically-perfected first priority postpetition replacement security interests, mortgages and other liens (collectively, the "Replacement Lien") senior to all other liens against the Debtors' estates on all property of the Debtors' estates that was encumbered by the Prepetition Liens immediately prior to the Petition Date, subject to valid, perfected and otherwise unavoidable liens existing as of the Petition Date, senior to the Prepetition Liens (the "Permitted Prior Liens") but specifically excluding for purposes of this Bridge Order the proceeds of any claims or actions under sections 544, 547 or 548 of the Bankruptcy Code (the "Excluded Avoidance Actions"). The property described herein together with the Prepetition Collateral is collectively referred to herein as the "Collateral".

    7.    *Automatic Perfection*. The Replacement Liens granted to Centrix pursuant to this Order shall be fully perfected by operation of law upon execution of this Order by the Court such that no additional steps need be taken by the Centrix to perfect said security interests, liens and priority. Centrix is not required to file financing statements, mortgages, notices of lien or similar

instruments in any jurisdiction or effect any other action to attach or perfect the Replacement Liens granted under this Order.

8. *Continued Insurance & Cash Management.* Until the obligations of the Prepetition Loan Documents have been indefeasibly paid in full in cash, and notwithstanding the expiration of the Specified Period or any earlier termination of the Debtor's authorization to use Cash Collateral hereunder, the Debtors shall: (a) insure the Collateral in the amounts and for the risks, and by the entities, as required under the Prepetition Loan Agreement, and (b) maintain the cash management system in effect as of the Petition Date.

9. *No Waiver of Prepetition Rights.* Except as expressly provided for herein or by the Bankruptcy Code, nothing contained herein shall (a) constitute consent by Centrix to the use of Cash Collateral other than as provided herein, or (b) obligate Centrix to permit the use of Cash Collateral other than as provided herein or to advance funds to the Debtor for any reason, including, without limitation, for the payment of expenses of administration under the Bankruptcy Code.

10. *Limitation of Cash Collateral.* From and after the date of this Bridge Order and pending the entry of any subsequent orders, Cash Collateral shall not, directly or indirectly, be used to pay administrative expenses of the Debtor and its estate, except for those expenses that are expressly set forth in the Budget.

11. *Debtor's Restrictions.* The Debtor is enjoined and prohibited from, at any time during this chapter 11 case, granting mortgages, security interest or liens in the Collateral or any portion thereof, to any other parties pursuant to Section 364(d) of the Bankruptcy Code or otherwise, which mortgages, security interest or liens are senior to or on a parody with the security interests or liens of Centrix. Centrix is authorized under Section 364(d) of the

Bankruptcy Code, to extend its Line of Credit to the Debtors in the amount not to exceed $190,000.00 during the period of the Cash Collateral Order. ("DIP Loan") The DIP laon is hereby secured by a lien of equal priority and scope to the pre-petition liens.

12.     *Security Documents*.  The Debtor shall execute and deliver to Centrix all such agreements, financing statements, instruments and other documents as Centrix may reasonably request to evidence, confirm, validate or perfect the liens and security interests granted herein.

13.     *Waiver of Claims*.  The Debtor waives and releases any and all claims known or unknown, against Centrix existing as of the date hereof.  The Debtor acknowledges that it will not subject Centrix to the equitable doctrines of "marshaling" or "subordination" or any other similar doctrine with respect to any of the Collateral.

14.     *Valid and Binding Agreements*.  The Debtor acknowledges and agrees that, as of the Petition Date, the Prepetition Loan Documents are valid and binding agreements enforceable against the Debtor in accordance with their terms, and that the Prepetition Liens grant to Centrix valid, enforceable, properly perfected, first priority security interests in the Prepetition Collateral.

15.     *Termination of Cash Collateral Usage.*  The Debtors' authorization to use Cash Collateral shall <u>terminate</u> upon the expiration of the Specified Period.  Except as expressly provided herein, termination of the Debtor's authorization to use Cash Collateral hereunder shall not impair the continuing effectiveness and enforceability of all other provisions hereof.

16.     *Survival of Provisions.*  The terms and provisions of this Cash Collateral Order with respect to the Replacement Lien shall survive the entry of any order confirming a plan of reorganization, dismissing, or converting the Case into a case under Chapter 7 of the Bankruptcy Code, and the Replacement Lien shall continue in the Case and in any such successor case, and shall maintain its priority as provided herein, until the Claim has been indefeasibly paid in full in

cash, notwithstanding the expiration of the Specified Period or any earlier termination of the Debtor's authorization to use Cash Collateral. The creation, scope, perfection and priority of the Replacement Lien shall not be altered or impaired by any plan of reorganization which may hereafter be confirmed or by any further order which may hereafter be entered in the Case, without the express written consent of the Centrix.

17. *Good Faith Reliance.* Centrix has acted in good faith in connection with this Cash Collateral Order, and is entitled to the full protection of Section 364(e) of the Bankruptcy Code. If any provision of this Order is hereafter modified, vacated or stayed by subsequent order of this or any other Court for any reason, such modification, vacatur, or stay shall not affect the validity, perfection, priority, or enforceability of the Replacement Lien granted by the Debtors herein.

20. *Certain Rights Preserved.* Centrix's failure to seek relief or otherwise exercise remedies under the Prepetition Loan Documents or the Order shall not constitute a waiver of any of its rights hereunder, thereunder, or otherwise.

20. *Nunc Pro Tunc Effect of this Interim Order.* This Order shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 and shall take effect and be fully enforceable *nunc pro tunc* to the Petition Date immediately upon execution hereof.

21. *Binding Effect.* The provisions of this Bridge Order shall be binding upon and shall inure to the benefit of Centrix, its successors and assigns, and the Debtors and its successors and assigns, including any trustee or other fiduciary hereafter appointed in this bankruptcy case, whether in chapter 11, chapter 7, or otherwise, as a legal representative of the Debtor or its estate.

22. *Payment..* The Debtors shall provide for a sale, among other things, for the payment of all amounts then due to Centrix under the proposed Sale.

23. *Party-In-Interest Status*. Centrix shall be deemed to be a party-in-interest for all purposes in this chapter 11 case with the right and opportunity to appear and be heard on all matters arising in the bankruptcy case including, without limitation: (a) employment and payment of professionals by the Debtor's estate; (b) the sale of any estate property; (c) any plan of reorganization proposed in the case; and (d) any proposed conversion or dismissal of the case.

24. *Access to Debtors' Estate*. Without limiting the rights of access and information afforded Centrix under the Loan Documents, the Debtors shall provide representatives, agents and/or employees of Centrix access to the Debtor's premises and its records and shall otherwise cooperate, consult with, and provide to such persons all such non-privileged information and information not subject to a binding confidentiality agreement, as they may reasonably request. The Debtors also shall provide to Centrix, at the time filed or provided, all statements, schedules, or financial reports which the Debtors file in the Bankruptcy Case or provides to the United States Trustee, in accordance with applicable Bankruptcy Rules, local bankruptcy rules, or guidelines of the United States Trustee. Centrix shall be authorized to conduct audits of its collateral, and the Debtors shall provide Centrix's auditor's with reasonable cooperation to enable Centrix to properly complete the audit.

25. *Debtors' Financials*. The Debtors shall provide and deliver to Centrix: (a) monthly Financial and Collateral Reports; (b) a weekly report, commencing October 28, 2013, comparing actual income and expenses to budgeted income and expenses for the preceding week and cumulative from the Petition Date. The Debtor shall also timely file all operating reports in accordance with U.S. Trustee guidelines and promptly provide copies of those report(s) to Centrix.

26. *Service of Bridge Order.* The Debtors shall serve a copy of this Bridge Order on all persons entitled to service of the same.

27. *Retention of Jurisdiction.* The Court has and will retain jurisdiction to enforce this Order according to its terms.

28. *Final Hearing Scheduled.* The Final Hearing to consider entry of a final order approving the use of Cash Collateral (the "Final Order") is scheduled for _____, 2013 am in Rutland, VT and VIT sites. On or before _____, the Debtors shall serve, by United States mail, first-class postage prepaid, notice of the entry of this Order and of the Final Hearing (the "Final Hearing Notice"), together with copies of this Order, the proposed Final Order and the Motion, on: (a) the Office of the United States Trustee, (b) the holders of the Debtor's secured claims, (c) the holders of the Debtors' twenty largest unsecured claims, and (d) all parties that have filed prior to the date of service requests for notice of matters in this case. The Final Hearing Notice shall state that any party in interest objecting to the entry of the proposed Final Order shall file written objections with the Clerk of the Bankruptcy Court no later than 5:00 p.m. on _____, 2013, which objections shall be served so that the same are received on or before such date by the Debtor's counsel and Centrix's counsel, as listed below.

Dated: _____ ___, 2013

                                       _____
                                       HON. COLLEEN A. BROWN
                                       UNITED STATES BANKRUPTCY JUDGE

**AGREED TO AND ACCEPTED BY**

Raymond J. Obuchowski
Jennifer Emens-Butler
Obuchowski & Emens-Butler, PC
P.O. Box 60, 1542 Vt. Rt. 107
Bethel, Vermont 05032
802-234-6244


By: ___/s/ Raymond J. Obuchowski___
        Raymond J. Obuchowski


**ATTORNEYS FOR THE DEBTORS AND DEBTORS IN POSSESSION**


Daniel W. Sklar, Esq.
Nixon and Peabody LLP
Attorneys to Centrix
900 Elm Street
Manchester, NH 03101
603-628-4008


By: ___[signature]___
        Daniel Sklar

**ATTORNEYS FOR CENTRIX BANK**

**SCHEDULE A**

PRE-PETITION LOAN DOCUMENTS AND
AMOUNTS DUE ON PREPETITION OBLIGATIONS

1.  On November 16, 2012, the Borrower executed and delivered to the Bank a Note (Loan No 501048693) in the original principal amount of Five Hundred Thousand Dollars ($500,000.00) As of the Petition Date, the amounts due under Line of Credit Note are as follows:

| | |
|---|---|
| Principal: | $ 418,303.00 |
| Interest: | $ 319.54 |
| **Total:** | **$ 418,630.54** |

2.  On August 29, 2012, the Borrower executed and delivered to the Bank a Note in the original principal amount of Two Million Dollars ($2,000,000) ("Loan No. 501047050"). As of the Petition Date, the amounts due under the Term Loan 1 Note are as follows:

| | |
|---|---|
| Principal: | $ 1,739,208.70 |
| Interest: | $ 5,839.42 |
| **Total:** | **$ 1,745,056.12** |

3.  On August 29, 2012, the Borrower executed and delivered to the Bank a Note in the original principal amount of Two Million Dollars ($2,000,000) ("Loan No. 501047042"). As of the Petition Date, the amounts due under the Term Loan 1 Note are as follows:

| | |
|---|---|
| Principal: | $ 1,211,900.32 |
| Interest: | $ 3,654.64 |
| **Total:** | **$ 1,215,562.96** |

4.  On August 29, 2012 and November 16, 2012, the Borrower executed and delivered to the Bank a Commercial Security Agreement (the "Line of Credit Note Security Agreement"). Pursuant to the terms of the Line of Credit Security Agreement, the Borrower granted the Bank a security interest in its assets defined as Collateral (the "Line of Credit Note Collateral") in the

Line of Credit Note Security Agreement as security for its obligations to the Bank pursuant to the Line of Credit Note and other Term notes

     5.     The Bank's security interest in the Collateral pledged by the Security Agreements was perfected by the filing of Uniform Commercial Code Financing Statement No. 12-252950, filed with the Vermont Secretary of State on September 4, 2012; and Financing Statement No. 2012-3548098 filed with the Maryland Secretary of State on September 4, 2012.