Filed & Entered
On Docket
November 27, 2013

UNITED STATES BANKRUPTCY COURT

DISTRICT OF VERMONT

IN RE:

|  |  |
|---|---|
| PLASTIC TECHNOLOGIES OF VERMONT, INC. ) | Case No.  13-10729- cab |
| PLASTIC TECHNOLOGIES OF MARYLAND, INC. ) | *Chapter 11 case* |
| PLASTIC TECHNOLOGIES OF NEW YORK, LLC. ) | Jointly Administered |
| Debtor in Possession.                                       ) | |

---

### ORDER APPROVING DEBTORS' SALE OF SUBSTANTIALLY ALL ASSETS FREE AND CLEAR OF INTERESTS AND ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

---

On October 21, 2013, Plastic Technologies of Vermont, Inc., Plastic Technologies of Maryland, Inc., and Plastic Technologies of New York, LLC (collectively, "Debtors" or "Sellers") filed a motion (the "Motion")[1] for an order approving the sale (the "Sale") of substantially all Debtors' assets (the "Acquired Assets") free and clear of all interests and assumption and assignment of certain executory contracts and unexpired leases to Consolidated Container Company, LP ("Stalking Horse" or "Purchaser") and related relief.  On October 22, 2013, this Court granted other relief requested in the Motion,

The Auction initially contemplated by the Court did not occur, however, because no other bidder submitted a bid for the Acquired Assets.

After hearing on November 26, 2013 (the "Sale Hearing") and consideration of the objections filed by the United States Trustee's office and the Internal Revenue Service,[2] this

---

[1] Any capitalized terms not defined herein shall have the meaning given to them in the Motion.

[2]     The Official Committee of Unsecured Creditors (the "Committee") also filed an objection to the relief sought by the Motion.  At the hearing on November 26, 2013, the Committee

Court has determined that, subject to the terms and conditions set forth in this Order, granting the remaining relief requested in the Motion is in the best interests of Debtors, their estates, creditors and other parties in interest, and is a proper exercise of Debtors' business judgment. It appears that proper and adequate notice of the Motion has been given, no other or further notice is necessary, and good and sufficient cause for this Order has been shown. Accordingly, it is hereby FOUND THAT:

a. This Court has jurisdiction over the above-captioned cases, this proceeding and all of Debtors' property, including the Acquired Assets to be sold, pursuant to 28 U.S.C. §§ 1334 and 157. This is a core proceeding. Venue of Debtors' cases and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This Order constitutes a final and appealable order within the meaning of 28 U.S.C. § 158(a).

b. The statutory predicates for the relief sought in the Motion and the basis for the approvals and authorizations contained in this Order are (i) Sections 105(a), 363 and 365 of the Bankruptcy Code and (ii) Bankruptcy Rules 2002, 6004, 6006, and 9014.

c. Proper, adequate, and sufficient notice of the Motion and Stalking Horse APA have been provided in accordance with Sections 363 and 365 of the Bankruptcy Code and in compliance with Bankruptcy Rules 2002, 6004, 6006, and 9014, the local rules of this Court and the procedural due process requirements of the United States Constitution. A reasonable

---

withdrew its objection subject to entry of this Order. The Internal Revenue Service also filed an objection which was withdrawn subject to entry of this Order and on the further condition that all rights and arguments concerning distribution of the sale proceeds were reserved, subject to the other terms of this Order, for resolution by litigation or agreement at a later date. Centrix Bank likewise reserved its rights and arguments and the parties agreed that this Court retains jurisdiction hear these disputes. Both Centrix and the IRS specifically consented to entry of a final judgment by this Court regarding allocation of the sale proceeds and the nature, extent and priority of their respective liens.

opportunity to object or be heard regarding the requested relief has been afforded to all interested parties.

  d.  Debtors provided due and proper notice of the assumption and assignment of the Assumed Contracts to each counterparty of an Assumed Contract (as defined in the Stalking Horse APA and identified in Schedule 1.01(b) thereto). No other or further notice of the Motion, Sale or assumption and assignment of the Assumed Contracts (including with respect to the payment of any cure amounts due thereunder) is necessary.

  e.  Debtors have demonstrated a sufficient basis to enter into the Stalking Horse APA, available at doc. #12, exh B. ~~attached hereto as Exhibit A~~, to sell the Acquired Assets, and to assume and assign the Assumed Contracts under Sections 363 and 365 of the Bankruptcy Code. Such actions, as modified by the provisions hereof, are appropriate exercises of Debtors' business judgment and in the best interests of Debtors, their estates and their creditors.

  f.  Debtors concluded that absent an immediate sale of the Acquired Assets, Debtors would have to close their business and liquidate their assets, which liquidation would substantially impair the value of the Acquired Assets. Debtors' equipment and other assets are specifically used and designed for their customers and, thus, a liquidation of Debtors' assets, without assumption and assignment of customer contracts, would significantly reduce Debtors' proceeds.

  g.  Following this Court's entry of the procedural order respecting the proposed sale of the Acquired Assets (the "Procedures Order"), the office of the United States Trustee appointed the Committee in the above-captioned jointly administered cases.

  h.  The Committee has, since its appointment, retained counsel, and engaged in negotiations with the Debtors, the Purchaser, and the creditors claiming senior secured liens on

the Debtors' assets, specifically Centrix Bank and the Internal Revenue Service (collectively, and without commenting on the priority of those two creditors *inter se*, the "Senior Secured Creditors");

  i. As a result of those negotiations, the Committee, the Debtors, the Purchaser, and the Senior Secured Creditors have agreed, and the Stalking Horse APA is hereby amended, as follows:

   A. Notwithstanding the provisions of the Stalking Horse APA, the cash consideration paid by the Purchaser at closing for the Acquired Assets shall be increased from Two Million Four Hundred Thousand and 00/100 Dollars ($2,400,000.00) to Two Million Five Hundred Eighty Thousand and 00/100 Dollars ($2,580,000.00).

   B. In addition to that cash consideration, within thirty (30) days after closing, the Purchaser shall execute and deliver a Surplus Equipment Earnout Agreement, which will be drafted by the Committee which shall provide that: (i) within sixty (60) days of closing, the Purchaser shall provide the Debtors; the Debtors' General Unsecured Creditors and any creditor or party in interest, upon written request to both the Debtors' and/or Creditors' Committee Counsel, with a list of equipment from the Acquired Assets that it does not expect to use in its ongoing operations (the "Liquidation Equipment"); (ii) thereafter, the Purchaser shall, at its sole expense, use diligent efforts to cause the orderly sale of the Liquidation Equipment; (iii) the sale of the Liquidation Equipment by the Purchaser shall take place within one year from the closing of the Acquired Assets; (iv) the Purchaser shall pay one half (50%) of the proceeds of any and all sales of the Liquidation Equipment, net only of any ordinary course auctioneer or broker expenses incurred by the Purchaser in connection with such sale,† [+ to Debtor's attorney, to be held in escrow, as provided below] and (v) if the Purchaser determines that it is commercially impracticable to sell the Liquidation Equipment, it shall, not less than sixty days prior to the expiration of the one-year period noted above, consult and coordinate in good faith with the Committee or a plan trustee administering assets on behalf of the Debtors' general unsecured creditors regarding the disposition of those assets in a manner which maximizes the value of that equipment for the benefit of the Debtors' general unsecured creditors;

   C. At closing, Centrix Bank shall pay, solely for the benefit of the Debtors' general unsecured creditors from the proceeds which otherwise flow to Centrix Bank on account of its secured claim: (i) cash consideration in the amount of Eighty Eight Thousand Dollars ($88,000); *plus* (ii) the Surplus Equipment Earnout Agreement (collectively, the "General Unsecured Creditor Carve-Out"). The cash component of the General Unsecured Creditor Carve-Out

4

shall be paid at closing to counsel for the Debtors, who shall deposit such funds into an interest-bearing escrow account for the benefit of the Debtors' general unsecured creditors, which escrow account shall be at a depository institution approved by the office of the United States Trustee. The General Unsecured Creditor Carve-Out shall be distributed to the Debtor's general unsecured creditors either pursuant to a Court-approved liquidating plan of reorganization, or through another means of distribution mutually satisfactory to the Debtor and the Committee.* For avoidance of doubt, and because the priority dispute between the IRS and Centrix Bank remains unresolved, if it is determined that Centrix Bank does not have a priority lien and is not entitled to any of the proceeds of the sale, or that the amount payable to Centrix Bank on account of its secured lien is less than $88,000, then the cash component of the General Unsecured Creditor Carve-Out shall be reduced to the amount actually payable to Centrix Bank on account of its secured lien on the Debtors' assets.

* and approved by the Court.

D. Centrix Bank agrees to subordinate, and does hereby subordinate, any under secured portion of its claim against the Debtors' estates to the claims of all other unsecured creditors, including general unsecured creditors. Centrix Bank, as a subordinated general unsecured creditor, shall not share in any distribution to general unsecured creditors or any priority creditor, including any distribution of the General Unsecured Creditor Carve-Out.

E. Centrix Bank's agreement, as set forth in subparagraphs C and D above, shall not alter or affect in any way the Fifty Thousand Dollar ($50,000) carve-out previously agreed to by Centrix Bank for the benefit of the Debtors' estates generally (the "Estate Carve-Out"). In addition to the foregoing, the Fifteen Thousand Dollar ($15,000) payment by the Debtors, with the consent of Centrix Bank, as a fee deposit for counsel to the Committee shall not reduce, affect in any way, or constitute a credit towards, either the Estate Carve-Out or the General Unsecured Creditor Carve-Out.

F. Purchaser, within sixty (60) days of closing, shall provide the Debtors' counsel, with a copy to the Committee, counsel for the Internal Revenue Service, and the office of the United States Trustee, with a verified list of all of the Debtors' former employees hired by the Purchaser (or an affiliate of the purchaser as the case may be), whether the Purchaser has agreed to honor the vacation time accrued by such persons while employed by one or more Debtors, and the amount of vacation time that the Purchaser has agreed to honor.

j. As demonstrated by (i) the testimony and other evidence proffered or adduced at the Sale Hearing and (ii) the representations of counsel made on the record at the Sale Hearing, through a bidding and auction process, Debtors and their professionals have complied, in good faith, in all material respects with the Procedures Order and have (a) afforded interested potential

5

purchasers a full, fair, and reasonable opportunity to qualify as Qualified Bidders and submit their highest or best offer to purchase the Acquired Assets at the Auction and (b) provided potential purchasers, upon request, sufficient information to enable them to make an informed judgment on whether to bid on the Acquired Assets. The Bidding Procedures were non-collusive, substantively and procedurally fair to all parties and were reasonable and appropriate.

k. Purchaser is a buyer in good faith, as that term is used in Section 363(m) of the Bankruptcy Code. The Stalking Horse APA, as modified by the terms hereof, was negotiated and entered into in good faith, based on arm's length bargaining, and without collusion or fraud of any kind. Based on the record before this Court, neither Debtors nor Purchaser engaged in any conduct that would prevent application of Section 363(m) of the Bankruptcy Code. Purchaser is therefore entitled to all of the protections of Section 363(m) of the Bankruptcy Code.

l. Debtors have full power and authority to enter into the documents contemplated by the Stalking Horse APA and the Sale has been authorized and approved in accordance with the requirements of state law and respective internal governance requirements. Other than as may be expressly provided for in the Stalking Horse APA, no further consents or approvals are required.

m. Section 363(f) of the Bankruptcy Code provides for the sale of the Acquired Assets free and clear of any interest in such property. ^[The Court finds] Those (i) holders of any liens, claims, interests or encumbrances in or on the Acquired Assets and (ii) non-Debtor parties, who did not object, or who withdrew their objections, to the Motion have consented pursuant to Section 363(f)(2) of the Bankruptcy Code. All objections to the Motion have been resolved or withdrawn or overruled.** Those holders of any liens, claims, interests or encumbrances in or on the Acquired Assets who did object fall within one or more of the other subsections of Section 363(f) of the

---

** the only outstanding objection is the portion of the US Trustee's objection challenging the carve outs. The Court has overruled that objection and the US Trustee has withdrawn the balance of its objection.

6

Bankruptcy Code and are adequately protected by having their liens, claims, interests or encumbrances, if any, attach to the Sale proceeds.

  n. Debtors may transfer the Acquired Assets to Purchaser, subject to the provisions of this Order including the additional consideration from the Purchaser described herein, free and clear of all liens, claims, interests or encumbrances because, in each case, one or more of the standards set forth in Section 363(f) of the Bankruptcy Code have been satisfied.  All liens, claims, interests and encumbrances in or on the Acquired Assets shall attach to the Sale proceeds with the same priority, validity, force, and effect that they now have, if any, as against the Acquired Assets and subject to any claims and defenses Debtors or other parties may possess with respect thereto.  All persons having any lien, claim, interest or encumbrance of any kind or nature whatsoever against or in Debtors or the Acquired Assets shall be forever barred, estopped and permanently enjoined from asserting the same against Purchaser, any of Purchaser's assets (including, without limitation, the Acquired Assets), property, successors or assigns; provided, however, that nothing in this paragraph is intended to, or shall, limit the rights of the Debtors' general unsecured creditors and their successors and assigns in, to, and under the Surplus Equipment Earnout Agreement, which rights shall survive the closing of the sale authorized hereby.

  o. Time is of the essence in consummating the Sale.  To effectuate the terms of the Stalking Horse APA, it is essential that the Sale occur as soon as possible.  Accordingly, there is cause to lift the fourteen (14) day stay imposed by Bankruptcy Rules 6004 and 6006.

  p. Based upon the foregoing findings and conclusions, and upon the record made before this Court at the Sale Hearing, and good and sufficient cause appearing therefore;

  IT IS HEREBY ORDERED AS FOLLOWS:

1.    The Motion, subject to the provisions of this Order, is GRANTED. The Sale, including all terms of the Stalking Horse APA as modified in accordance with section (i) above (describing the additional consideration and accommodations negotiated for by the Committee), which is fully incorporated herein, is approved subject to the terms and conditions hereof. Debtors and Purchaser are hereby authorized and directed to perform and complete all obligations and acts necessary to carry out the Sale and terms of the Stalking Horse APA, as modified by the terms of this Order.

2.    All objections and responses to the Motion are resolved in accordance with the terms of this Order and as set forth in the record of the Sale Hearing.

3.    Notice of the Sale Hearing was fair and appropriate under the circumstances and complied in all respects with Bankruptcy Rules 2002, 4001, 6004 and 6006.

4.    Notwithstanding Bankruptcy Rules 6004 and 6006, this Order shall be effective and enforceable immediately upon entry, and is not subject to any stay.

5.    Purchaser is a "good faith" purchaser entitled to the protections of Section 363(m) of the Bankruptcy Code.

6.    The Acquired Assets shall be transferred to Purchaser free and clear of all liens, claims and encumbrances in or on the Acquired Assets in accordance with Section 363(f) of the Bankruptcy Code, and all Administrative Expense shall be paid .

7.    Purchaser has provided adequate assurance of future performance under the Assumed Contracts. The assumption by Debtors and assignment to Purchaser of the Assumed Contracts is authorized and approved pursuant to Sections 363 and 365 of the Bankruptcy Code.

The Assumed Contracts shall be deemed valid and binding and in full force and effect. Purchaser shall be liable for all obligations under such Assumed Contracts arising on and after closing of the Sale.

8. Debtors shall promptly pay to counterparties of Assumed Contracts the amounts set forth by Debtors on the corresponding Cure Notices, or as amended by mutual agreement of Debtors and counterparties to Assumed Contracts or the Court (the "Final Cure Costs"), which are set at $0.00 for all Assumed Contracts. The Final Cure Costs are fixed and counterparties to the Assumed Contracts are forever bound by such Final Cure Costs and forever barred, estopped, and permanently enjoined from asserting any other amounts under such Assumed Contracts against Debtors and their estates.

9. At closing of the Sale, the gross proceeds of the Sale shall, in accordance with the provisions of this Order, be deposited in one or more interest-bearing escrow accounts, at a depository institution approved by the office of the United States Trustee for Region 2 ("United States Trustee"), and shall be held in escrow pending further order of this Court, with all liens and Carve-Out rights to attach to the proceeds. Such escrowed funds shall be subject to the Estate Carve-Out and the General Unsecured Creditor Carve-Out, and those carve out should each be escrowed separately from the other sale proceeds and from one another. The escrowed funds shall be subject to the rights of parties in interest to challenge Bank's lien under the terms of Debtors' debtor-in-possession financing order.

10. The provisions of this Order shall be self-executing. Debtors and Purchaser are hereby authorized but not directed, to execute or file releases, termination statements, assignments, consents, or other instruments they deem necessary to implement the provisions of this Order and incorporated Stalking Horse APA, all as modified hereby.

11. This Court shall retain exclusive jurisdiction to enforce the terms and provisions of this Order in all respects and to decide any disputes concerning this Order, the Stalking Horse APA as modified hereby, or any issues related thereto.

12. The provisions of this Order and any actions taken pursuant hereto shall survive entry of any order which may be entered dismissing or closing Debtors' cases.

**SO ORDERED**

**Dated:** Nov 27, 2013

*/s/ Colleen A. Brown*

**The Honorable Colleen A. Brown**
**United States Bankruptcy Judge**